PEARSON, MJ.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

|  |  |
|---|---|
| ALBERTO RODRIQUEZ MOSQUERA, | CASE NO. 4:09CV1402 |
| Plaintiff, |  |
|  | JUDGE PETER C. ECONOMUS |
| v. |  |
|  | MAGISTRATE JUDGE PEARSON |
| MS. DELGADO; MR. BARGAS; MS. RODRIGUEZ; DR. JANE DOE; and JOSEPH GUNJA, WARDEN, |  |
| Defendants. | **REPORT AND RECOMMENDATION** |

This civil rights action was brought by a *pro se* state prisoner pursuant to 42 U.S.C. § 1983.[1] On December 30, 2009, Defendants Mr. Vargas ("Vargas") and Ms. Delgado ("Delgado") moved to dismiss Plaintiff Alberto Rodriquez Mosquera's ("Mosquera") Complaint.[2] See ECF No. 17. For the reasons explained below, the undersigned recommends granting, with prejudice, the dismissal of Mosquera's Complaint claims against Defendants Vargas and Delgado for failure to state a claim. Also, the undersigned recommends dismissing, without prejudice, the claims against Defendant Dr. Jane Doe for failure to serve.

On July 13, 2001, Plaintiff Mosquera was found guilty of nine counts related to

---

[1] District Court Judge Peter C. Economus ("Judge Economus") has referred this matter to the undersigned for general pretrial supervision, including all motions. See ECF No. 5.

[2] In his Complaint, Mosquera erroneously referred to Defendant Vargas as "Mr. Bargas." Defendants' Motion to Dismiss corrects the error and explains that: "[T]here is and was no NEOCC employee with the surname 'Bargas' and Defendants believe the intended defendant is Correctional Officer Wilfredo Vargas." Plaintiff has not objected to this correction so the undersigned adopts it. See ECF No. 17 at 1.

(4:09CV1402)

importation of heroin and cocaine and committed to the custody of the United States Bureau of Prisons to serve a 121 month sentence. ECF No. 17 at 2. Mosquera was incarcerated at the Northeast Ohio Correctional Center ("NEOCC") operated by Corrections Corporation of America ("CCA") in Youngstown, Ohio. As of November 12, 2009, Mosquera was deported to Columbia and is no longer incarcerated at NEOCC.[3] *See* ECF No. 13.

## I. Relevant Factual History

Mosquera's Complaint alleges that, on April 18, 2008, the head of a Colombian gang, inmate Ivan Catano Bolivar, instigated a food strike. Bolivar accused Mosquera of passing information to the prison administration about the food strike. ECF No. 1 at 3.

On several occasions prior to April 18, 2008, Mosquera alleges that he informed Delgado, his case manager, that "he feared for his personal health and safety due to serious threats and conflict he was having with Ivan Catano . . . ." ECF No. 1 at 3. On April 18, 2008, Mosquera had a closed-door meeting with Delgado and a secretary, Ms. Rodriguez ("Rodriguez"), during which he explained that he was being wrongly accused of passing information to the prison administration and requested a transfer to another prison facility. ECF No. 1 at 3-4. Mosquera alleges that each time he talked to Delgado, she told him not to worry and that she would take care of the problem. ECF No. 1 at 3. On April 18, 2008, Mosquera informed Vargas of his fears and asked Vargas to transfer him to a different prison facility. ECF No. 1 at 3. Vargas refused

---

[3] On November 30, 2009, Mosquera filed a letter addressed to Judge Economus. The letter explained that Mosquera would no longer be incarcerated at NEOCC, as he was being deported to Colombia. Mosquera requested that all subsequent correspondence be sent to his forwarding address in Colombia. *See* ECF No. 13.

(4:09CV1402)

Mosquera's request.  On that same day, Mosquera asked several correctional officers for a transfer.  ECF No. 1 at 4.

Mosquera further alleges that, on April 18, 2008, he had a verbal altercation with prisoners Javier Rojas Bolanos ("Bolanos"), "Carlos" and "inmate Rendon."  ECF No. 1 at 4.  These prisoners are members of the Colombian gang that had instigated the food strike.  ECF No. 1 at 3.  The prisoners accused Mosquera of working with the prison administration, threatened Mosquera with "several sharp objects" and threatened Mosquera's family.  ECF No. 1 at 4.  Mosquera does not state whether he informed Delgado or Vargas of the verbal altercation, threats with sharp objects or threats to his family.

On May 3, 2008, two weeks after the alleged April 18th threats, Mosquera was assaulted by prisoners "inmate Rendon," "Carlos," and Bolanos during recreation.  ECF No. 1 at 4.  Mosquera suffered injury to his eyes, nose, mouth, and chest.  Bolanos cut Mosquera's left wrist and stomach and "inmate Rendon" stomped on his hand with heavy boots.  ECF No. 1 at 4.  Mosquera yelled for help and was rescued by two correctional officers.  Both officers acknowledged that they saw Mosquera being attacked and took Mosquera to the infirmary.  ECF No. 1 at 5.

At the emergency room, medical personnel told Mosquera that the cuts to his wrist and stomach would require stitches.  ECF No. 1 at 5.  Mosquera was x-rayed to determine if his hand was broken but the x-rays were inconclusive.  That night Mosquera was given two Tylenol, however, he continued to endure severe pain throughout the night.  ECF No. 1 at 5.

The next day Defendant Dr. Jane Doe prescribed Motrin for pain relief, but refused to put

3

(4:09CV1402)

stitches in Mosquera's wounds. ECF No. 1 at 5-6. Mosquera overheard Dr. Jane Doe tell a colleague that he (Mosquera) was "faking." ECF No. 1 at 6. After discharge from the infirmary, despite several attempts to secure follow-up medical treatment for his wounds, including obtaining a pass to the hospital and writing letters to the Warden and Dr. Jane Doe, Mosquera was not sent back to the hospital for follow-up care. ECF No. 1 at 6. Mosquera continued to bleed from his unstitched wounds for days after the attack. ECF No. 1 at 6. The only redress he received for his wounds was the advise of a member of the prison staff – "in the future avoid disagreements with certain inmates." ECF No. 1 at 6. Mosquera continues to suffer from migraine headaches, dizziness, and physical pain from his wounds. ECF No. 1 at 6.

## II. Procedural Background

Mosquera previously filed an action against the same Defendants in February of 2009. ECF No. 17. Because Mosquera failed to pay the filing fee in a timely manner or file a proper application for leave to proceed *in forma pauperis*, the previous action was dismissed without prejudice on May 11, 2009. ECF No. 17. Mosquera's motion for reconsideration of the dismissal was denied. ECF No. 17.

On June 19, 2009, Mosquera filed the instant Complaint (ECF No. 1). Mosquera alleged that Defendants Delgado, Vargas, Rodriquez and Warden Gunja were deliberately indifferent in their failure to protect him from an inmate assault and that following the assault, Defendant Dr. Jane Doe was deliberately indifferent in her failure to administer adequate medical care. *See* ECF No. 1.

On September 25, 2009, after conducting a review of the Complaint, Judge Economus

4

(4:09CV1402)

held that there are no allegations in Mosquera's Complaint which state a claim against Defendants Rodriquez and Warden Gunja. *See* ECF No. 4. Accordingly, Mosquera's Complaints against Rodriquez and Warden Gunja were dismissed and the matter proceeded against Vargas, Delgado and Dr. Jane Doe. *See* ECF No. 4.

On September 28, 2009, summonses were issued to Vargas, Delgado and Dr. Jane Doe. On October 19, 2009, the summons addressed to Dr. Jane Doe was returned with the notation "No one with this name." *See* ECF No. 10. Also on October 19, 2009, the summonses addressed to Vargas and Delgado were executed. On November 18, 2009, the Court issued a Show Cause Order, directing Delgado and Vargas to answer the Complaint and directing Mosquera to serve or provide good cause for failure to serve Dr. Jane Doe. On the same day, after accepting service on October 19, 2009, Delgado's summons was returned with the notation "Recd certified mail return, forwarding order expired." The word "unclaimed" was written on the front of the returned envelope. *See* ECF No. 12.

On December 30, 2009, upon receiving permission of the Court to plead, Delgado and Vargas filed a Motion to Dismiss alleging that Mosquera's Complaint fails to allege facts from which it can be plausibly inferred that the defendants perceived a substantial threat to Mosquera's safety; inferred a need for protection from other inmates; and were consciously indifferent to and deliberately disregarded that risk. *See* ECF No. 17. The undersigned finds that Defendants' grounds for dismissal has merit.

### III. Standard of Review

A complaint may be dismissed for failure to state a claim if " 'it fails to give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' "

(4:09CV1402)

>  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly,* 550 U.S. at 555; *see also Ashcroft v. Iqbal*, --- U.S. ----, ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) ( "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 129 S.Ct. at 1949. Although the plausibility standard is not equivalent to a " 'probability requirement,' ... it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft,* 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-that the pleader is entitled to relief." *Ashcroft*, 129 S.Ct. at 1950 (quoting Fed. R. Civ. P. 8(a) (2)).
>
>  To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir.1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994).

*Lawson v. Haddon et al.*, 2009 WL 2242692 * 3 (W.D. Mich 2009).

### IV.  Defendants Delgado and Vargas

**Mosquera's Eighth Amendment - Failure to Protect Claim**

Mosquera claims that despite his efforts to explain the danger he was in and his requests to be transferred, Defendants (case manager) Delgado and (corrections officer )Vargas failed to protect him from an assault by prisoners involved in the April 18, 2008 food strike. *See* ECF No. 1.

When determining whether a prison official failed to protect a prisoner pursuant to the

6

(4:09CV1402)

Eighth Amendment, the Court employs a two prong test containing an objective and a subjective component. The objective component considers whether the alleged deprivation was sufficiently serious. In this respect, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer v. Brennan,* 511 U.S. 825, 834 (1994). The subjective component, however, examines the official's state of mind to determine whether he acted with "deliberate indifference" equivalent to an intent to punish to inmate health or safety. *Id.* See also *Molton v. City of Cleveland*, 839 F.2d 240, 243 (6th Cir. 1988).

Essentially to establish a violation of the Eighth Amendment, Mosquera must show that Defendants "actually knew" that he "faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847.

**1. Objective Test**

For a claim based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* at 834 (*citing Helling*, 509 U.S. at 35).

Mosquera's Complaint does not allege that he notified Defendants Delgado or Vargas of the specific April 18th threats by the three prisoners who assaulted Mosquera, nor does he allege that he gave specific details and facts regarding other alleged "serious threats and conflict . . . with Ivan Catano Bolivar." Mosquera does generally allege that he repeatedly told Defendants that he "feared for his personal health and safety due to serious threats and conflict he was having with Ivan Catano Bolivar [and other gang members] . . . ." Additionally, Mosquera does not allege that the three prisoners had attempted to assault him in the past or had a history of assault

7

(4:09CV1402)

on other prisoners.

When an inmate fails to allege that he received specific threats and that he communicated those specific threats or fears to prison personnel, the Complaint fails to state an Eighth Amendment claim for failure to protect. *Harrison v. Burt*, 2008 WL 5062808 (E.D. Mich. Nov. 25, 2008). Moreover, an inmate's failure to allege that he asked prison personnel for protection after notifying them of having received a threat of physical harm, fails to state plausible claim that officials "had objective knowledge of a substantial risk to Plaintiff and deliberately ignored the situation." *Taylor v. Welch*, 2007 WL 3302099 at *4 (W.D.Mich. Nov. 6, 2007).

Construing Mosquera's pleading liberally, it appears that Defendants did not have the pertinent facts to have anticipated the severity of the risk the three prisoners posed to Mosquera. Accordingly, the undersigned does not find that the Complaint alleges that Mosquera was incarcerated under conditions posing a objectively serious risk of harm.

### 2. Subjective Test

If the objective test is satisfied, the Court must then determine whether the prison official acted with a "sufficiently culpable state of mind," or whether the official was deliberately indifferent to Mosquera's health or safety. *Farmer*, 511 U.S. at 834. Although being violently assaulted in prison is simply not part of the penalty inmates pay for their crimes, the Eighth Amendment is not implicated where prison officials simply acted with negligence. *See Perez v. Oakland County*, 466 F.3d 416, 423 (6th Cir. 2006) (*citing Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976)). In other words, to establish that the prison official acted with deliberate indifference, Mosquera must "present evidence from which a trier of fact could conclude that the

8

(4:09CV1402)

official 'was subjectively aware of the risk and disregard[ed] that risk by failing to take reasonable measures to abate it.'" *Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir.2004) *(quoting Farmer*, 511 U.S. at 829).

Mosquera's Complaint does not allege that Defendants Delgado and Vargas acted with deliberate indifference towards his safety. Mosquera alleged that before the food strike on April 18, 2008, he expressed to Delgado several times that he feared he was in danger. On the day of the food strike, Mosquera expressed these fears to Delgado again and asked to be transferred. Delgado assured Mosquera that she would take care of the problem. Also on that day Mosquera expressed his fears to Vargas and several correctional officers.

The Complaint does not allege that Vargas and Delgado deliberately did not help Mosquera when faced with the certainty that he would be assaulted. There are no allegations that either Vargas or Delgado witnessed Mosquera receiving threats or received any substantiation of Mosquera's concerns. The Complaint alleges that he told Defendants several times that he was fearful and that he wanted to be transferred to an different facility, but does not allege that Delgado and Vargas had concrete facts or personal knowledge of the specific threats Mosquera had received. Prisoners have no constitutional right to a prompt transfer to a different prison facility. Claims premised on such a right fails to allege an actionable claim. *Harrison*, 2008 WL 5062808 at *1

The allegations in the Complaint do not allege circumstances under which Defendants should have been expected to take more seriously Mosquera's concerns and, based upon those somewhat vague concerns alone, transfer him. *Farmer*, 511 U.S. at 829 ("Prison officials

9

(4:09CV1402)

charged with deliberate indifference might show, for example, that they did not know of the underlying facts indicating a sufficiently substantial danger and that they were therefore unaware of a danger, or that they knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent.").

Defendants accurately point out that the Complaint does not allege that Mosquera had a significant concern for his physical safety between April 18 and May 3, the dates of the alleged threats and the date of the attack, respectively, given that he did not seek administrative segregation for immediate protection. This appears to be a case wherein Mosquera himself may have underestimated the threats he received. In such a case, it is difficult to envision how prison officials, acting with even less information, could have been expected to act differently. Consequently, Mosquera has not alleged facts from which a trier of fact could conclude that Defendants "[were] subjectively aware of the risk and disregard [ed] that risk by failing to take reasonable measures to abate it." *Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004) (*quoting Farmer*, 511 U.S. at 829).

Viewed in the light most favorable to Mosquera, the Complaint does not allege facts sufficient to plausibly infer that Defendants had reason to have *subjectively* known that the three prisoners would assault Mosquera two weeks after he reported the threats. *See Stewart v. Love, 696 F.2d 43, 45 (6th Cir. 1982)* ("[P]rison officials were faced with unsupported allegations and were required to reach a professional judgment on the basis of facts as they appeared. In retrospect, that judgment appears to have been flawed, but the court concludes that any wrongdoing was mere negligence, and was not a violation of the plaintiff's rights under the 8th

10

(4:09CV1402)

or 14th Amendments."), *modified on other grounds*, McGhee v. Fotlz,852 F.2d 876 (6th Cir. 1988).

Because the Complaint has *not* shown (1) an objective risk of serious harm and (2) that Defendants were subjectively aware of that risk and disregarded that risk, Mosquera has failed to show that Defendants Vargas and Delgado violated his Eighth Amendment rights. Accordingly, the undersigned recommends that Defendants' motion to dismiss (ECF No. 17) be GRANTED with prejudice.

## V. Dr. Jane Doe

### Mosquera's Failure to Properly Serve Dr. Jane Doe

The Court's docket reflects that service was attempted on Defendant Dr. Jane Doe by certified mail on October 19, 2009 and returned marked "no one with this name." ECF No. 10. On November 18, 2009, the undersigned issued a Show Cause order, directing Mosquera to serve or show good cause for failure to serve Dr. Jane Doe as provided under the Rules. *See* ECF No. 11. The undersigned notified Mosquera that the consequence of failure to serve would be dismissal without prejudice. ECF No. 11 at 2. The Court's docket does not show that any further attempt to effect service has been made.

Once a plaintiff has commenced an action in the Federal Courts, the burden is upon that party to obtain service of process upon each defendant. To effectuate service upon a defendant, the plaintiff is required by the Civil Rules to act in a reasonable and diligent manner. The opportunity to obtain service upon a defendant expires "within 120 days after the filing of the

11

(4:09CV1402)

complaint."[4] Fed. R. Civ. Proc. 4(m).

Mosquera filed his Complaint (ECF No. 1) in June of 2009.  Thus, pursuant to Fed. R. Civ. Pro. 4(m) Mosquera had until October 2009 to serve Dr. Jane Doe and has not done so. Accordingly, as forecasted in the Order to Show Cause (ECF No. 11), the undersigned recommends that the claims against Dr. Jane Doe be dismissed without prejudice.[5]

                                                                        */s/ Benita Y. Pearson*

Dated: April 30, 2010                                    United States Magistrate Judge

**OBJECTIONS**

Objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *See* United States v. Walters, 638 F.2d 947 (6th Cir. 1981).  *See also*, Thomas v. Arn, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).

---

    [4] Specifically, Rule 4(m) 2 of the Federal Rules of Civil Procedure provides: If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected with a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period. This subdivision does not apply to service in a foreign country pursuant to subdivision (f) or (j)(1).

    [5] Defendants did not address Mosquera's claims against Dr. Jane Doe in their Motion to Dismiss, except in footnote 12 which says, "As 'Dr. Jane Doe' has not yet been served in this action, despite the fact that the time limit for service under Rule 4(m) lapsed on October 19, 2009 and Plaintiff failed to respond to the Court's November 18, 2009 Order to Show Cause for failure to service, this motion does not address the medical claims which are applicable solely to Defendant 'Dr. Jane Doe.'" ECF No. 17 at 4, note 12.  As Mosquera's failure to administer adequate medical care claim was leveled solely against Dr. Jane Doe and Mosquera has failed to properly serve Dr. Jane Doe, the undersigned will not address the merits of that claim.